**E-FILED**
Wednesday, 15 June, 2016  02:40:46 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PNC BANK, N.A., successor to | ) | |
| National City Bank, successor to | ) | |
| National City Bank of | ) | |
| Michigan/Illinois, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-1417 |
| | ) | |
| BOHANNAN MEDICAL | ) | |
| DISTRIBUTORS, INC., CHERYL | ) | |
| BOHANNAN, TOMMY BOHANNAN, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER AND OPINION</u>

This matter is now before the Court on Plaintiff's Motion [16] for Summary Judgment and Defendants' Motion [23] for Continuance. For the reasons set forth below, Plaintiff's Motion for Summary Judgment [16] is Granted against all Defendants as it relates to liability under the Note, and Denied against all Defendants as it relates to liability under the Credit Card Agreement. Defendants' Motion [23] to Continue is Granted subject to the limitations set forth in this Order.

### BACKGROUND

Plaintiff, PNC Bank, N.A. ("PNC" or "PNC Bank"), initiated this action against Defendants Bohannan Medical Distributors, Inc. ("BMD" or "Borrower"), and Cheryl and Tommy Bohannan ("Guarantors"), alleging four counts of breach of contract arising out of Defendants' default on a commercial loan and credit card. Count 1 alleges breach of contract by BMD based upon a commercial loan evidenced by a promissory note ("Note") from Borrower to PNC for the original principal amount of $200,000. Count 2 alleges breach of contract by BMD

1

arising out of a business credit card loan agreement ("Credit Card Agreement") between PNC and Borrower. Counts 3 and 4 state breach of contract claims against Cheryl and Tommy Bohannan based upon guaranties provided by the Bohannans in favor of PNC whereby Guarantors promised to pay all amounts due under the Note and Credit Card Agreement.

The following are taken from Plaintiff's statement of undisputed material facts. Plaintiff and Borrower entered into commercial loan agreement in April of 2010 for $200,000 as evidenced by a Note in favor of Plaintiff stating that "payment in full is due immediately upon Lender's demand." E.C.F. Doc. 23, at 2-3. On August 12, 2015, Plaintiff demanded Borrower pay the Note in full. Borrower failed to pay all amounts due under the Note, $ 188,714.28, and is in default. Plaintiff and Borrower also entered into a Credit Card Agreement in 2003. Under the terms of the Credit Card Agreement, a default under any loan between the Borrower and Plaintiff, including the Note, constitutes a default under the Credit Card Agreement. Thus, because Borrower defaulted on the Note, it also defaulted on the Credit Card Agreement, for which $29,733.87 remains due. Tommy and Cheryl Bohannan both executed guaranties in favor of Plaintiff guarantying payment of all amounts due on the Note and Credit Card Agreement. The Bohannans have failed to pay the amounts due under the Note and Credit Card Agreement. E.C.F. Doc. 16, at 3-5.

Defendants dispute the following. Defendants state that Plaintiff's initially demanded payment on September 22, 2014, but Defendants entered into a subsequent verbal agreement with Plaintiff which specified set payments of $1,303 per month on the Note and required regular payments on the Credit Card Agreement.[1] Defendants state that they were not in default on the

---

[1] In response to this Court's Order (E.C.F. Doc. 30) directing Defendants to properly address Plaintiff's fourth statement of undisputed fact, Defendants submitted an affidavit acknowledging receipt of the August 12, 2015, Demand Letter. Thus, the existence and delivery of the Demand Letter to Defendants are not at issue. See Fed. R. Civ. P. 56 (d,e).

subsequent agreement at the time this action was filed. Therefore, because "[m]aterial issues of disputed fact exist as to whether there was a subsequent enforceable agreement which modified the terms of the April 10, 2000 Promissory Note," Defendants argue that "[d]iscovery is necessary to allow Defendants to access documents in PNC's possession which could substantiate the existence of a subsequent agreement and which could refute Plaintiff's assertion that the subsequent agreement was am [sic] unenforceable verbal promise." E.C.F. Doc. 23, at 8.

### STANDARD OF REVIEW

Under Rule 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322-23. However, "[t]he burden on the non-movant is not onerous." *Waldridge v. American Hoechst Corp*., 24 F.3d 918, 921 (7th Cir. 1994). Rather, the non-movant "need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact" and "may rely on affidavits or any other materials of the kind identified in Rule 56(c)." *Id*.

### ANALYSIS

**(1) Defendants' Claim of an Oral Modification to the Note Fails as a Matter of law**

Defendants' primary argument in response to PNC's motion for summary judgment relates to a purported verbal agreement between PNC and Defendants that occurred sometime

after they received the first Demand Letter on September 22, 2014. See E.C.F. Doc. 24, at 2.

Specifically, Defendants' response states:

> While the representative was speaking with Mr. Bohannan, it was evident that she was reviewing materials which allowed her to communicate approval of the $1,303.00 payment amount. However, Defendants do not currenlty [sic] possess those materials.

> E.C.F. Doc. 23, at 2.

Under Illinois law, a credit agreement is defined as "an agreement or commitment by a creditor

to lend money or extend credit or delay or forbear repayment of money not primarily for

personal, family or household purposes, and not in connection with the issuance of credit cards."

815 ILCS 160/1. Section 2 of that Act provides that credit agreements must be in writing:

> § 2. Credit agreements to be in writing. A debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing, expresses an agreement or commitment to lend money or extend credit or delay or forbear repayment of money, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

> 815 ILCS 160/2.

Finally, Section 3 of the Act defines actions that are not considered agreements:

> § 3. Actions not considered agreements. The following actions do not give rise to a claim, counter-claim, or defense by a debtor that a new credit agreement is created, unless the agreement satisfies the requirements of Section 2:
> (1) the rendering of financial advice by a creditor to a debtor;
> (2) the consultation by a creditor with a debtor; or
> (3) the agreement by a creditor to modify or amend an existing credit agreement or to otherwise take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies in connection with an existing credit agreement, or rescheduling or extending installments due under an existing credit agreement.

> 815 ILCS 160/3.

Defendants' assertion that PNC entered into a verbal agreement that modified the terms of the Note is immaterial because the Illinois Credit Agreement Act[2] requires credit agreements and modifications to be in writing and signed by the creditor and debtor. 815 ILCS 160/2. Because Defendants do not allege that they signed a written modification agreement, their claim of a verbal modification to the Note "do[es] not give rise to a . . . defense by a debtor that a new credit agreement is created." 815 ILCS 160/3. Similarly, the documents Defendants seek from PNC to "substantiate the existence of a subsequent agreement" are immaterial. E.C.F. Doc. 23, at 8. Even if PNC was in possession of a document memorializing the purported verbal modification agreement, Defendants would still be barred from maintaining this action because their signature was required. *Id.*[3]

**(2) Even if the Alleged Verbal Agreement was Enforceable, Defendants Were Still in Default on the Note**

Defendants' response claims that "discovery is warranted given Defendants' showing that they fully performed the subsequent agreement and Plaintiff accepted Defendant's performance for a significant period of time before commencing this action." E.C.F. Doc. 23, at 9. While Defendants' response characterizes the purported verbal agreement as payment of $1,303 towards the Note, the accompanying affidavit of Tommy Bohannan states that the PNC representative "told me that if I made payments in the amount of $1,303.00 on the Note as well as regular payments on the Business Credit Card Account I would remain in good standing on both." E.C.F. Doc. 24, at 2. Therefore, in order to satisfy the terms of the alleged verbal agreement, Defendants were required to pay $1,303 toward the Note each month and make

---

[2] The Act applies to the loan and Note between PNC and BMD because it was a commercial loan to the corporate entity, and thus "not primarily for personal, family or household purposes, and not in connection with the issuance of credit cards. 815 ILCS 160/1.

[3] To the extent that Defendants claim the verbal agreement constituted an entirely new credit agreement, that claim would likewise fail unless signed by both parties. See 815 ILCS 160/3 ("The following actions do not give rise to a claim, counter-claim, or defense by a debtor that a new credit agreement is created, unless the agreement satisfies the requirements of Section 2 . . .").

"regular" payments under the Credit Card Agreement. As discussed below, Defendants defaulted on the Note by not tendering payment upon PNC's August 12, 2015, Demand for Payment.

Assuming that the written agreement was in fact modified by a later verbal agreement, Defendants do not allege that the agreement modified the Note's provisions that "Borrower will pay this loan immediately upon Lender's demand" or "acceptance of partial payments by the Bank shall not constitute a waiver of the Bank's acceleration of the Loans or of any other rights of the Bank . . ." E.C.F. Doc. 16-1, at 8; *Id.* at 26; see also E.C.F. Doc. 23, at 3 ("Defendants admit that the Note states that '[p]ayment in full is due immediately upon Lender's demand.'"). Therefore, accepting as true Defendant's contention that a verbal modification to the agreement validly modified the monthly payment rate, the Note was still due on August 24, 2015, in accordance with PNC's August 12, 2015, Demand for Payment. See E.C.F. Doc. 16-1, at 26. Because the purported verbal agreement modifying the monthly payment is insufficient to create a material dispute of fact, Plaintiff is entitled to summary judgment on Count 1 of its Complaint against BMD for breach of contract.

**(3) A Material Dispute of Fact Remains as to Whether Defendants Defaulted on the Credit Card Agreement**

Plaintiff alleges that "[a] default under any loan between Borrower and Plaintiff, including the $200,000 Note, constitutes a default under the Business Credit Card Agreement." E.C.F. Doc. 23, at 5. In support of that allegation, Plaintiff attached a copy of the alleged agreement. See E.C.F. Doc. 16-1, at 12. That document states in relevant part:

> Section 6. Default.
> A. Any of the following with respect to Company or any guarantor of the Account shall constitute a default hereunder: insolvency, bankruptcy, dissolution, death, legal incapacity, issuance of an attachment or garnishment against any of its property, exceeding the maximum Credit Limit or Cash Advance Limit established by Bank for the Account, *failure to make any payment when due under this Agreement or under any other note or obligation to Bank . . . .*

See E.C.F. Doc. 16-1, at 12 (emphasis added).

In response to the statement in PNC's motion for summary judgment that "[a] true and correct copy of the Business Credit Card Agreement is attached to Plaintiff[']s Complaint as Exhibit C,"  Defendants state that they "need additional discovery to determine whether the Business Credit Card Agreement attached to the Complaint, which is not signed by any party, is the agreement which pertains to the credit card account referenced in the Complaint." E.C.F. Doc. 23, ¶¶ 7-8.

Plaintiff has not provided a copy of the Credit Card Agreement signed by Defendants, and Defendants submitted an affidavit indicating that the Credit Card Agreement is not in their possession. Thus, a dispute of fact remains as to whether the agreement attached to Plaintiff's motion for summary judgment was the agreement that Defendants entered into with the Bank. See Fed. R. Civ. P. 56(d). The dispute regarding the terms of the agreement is material because Plaintiff's motion relies on the terms of the Credit Card Agreement as the basis for default under both loans. See E.C.F. Doc. 16, ¶¶ 9-10 ("A default under any loan between Borrower and Plaintiff, including the $200,000 Note, constitutes a default under the Business Credit Card Agreement . . . Borrower is in default under the terms of the Business Credit Card Agreement based upon its failure to pay all amounts due on the $200,000 Note."). Therefore, Plaintiff is not entitled to summary judgment on its claim against Borrower for breach of the Credit Card Agreement at this time.

**(4) The Guaranty Agreements**

Plaintiff's third and fourth claims allege Tommy and Cheryl Bohannan breached their guaranty agreements. Defendants do not dispute that the guaranty agreements were executed in favor of PNC and guaranteed payment of all amounts due on the Note and Credit Card Agreement. See E.C.F. Doc. 23, at 2. As discussed above, the Note became due after PNC issued the August 12, 2015, Demand Letter to Borrower. Because BMD failed to pay all amounts due on the Note, and Tommy and Cheryl Bohannan personally guaranteed BMD's promise to pay the Note, they are liable for the unpaid balance of the Note, $ 188,714.28. However, because a material dispute of fact remains as to whether BMD was in default under the terms of the Credit Card Agreement, Plaintiff is not entitled to summary judgment on the issue of Tommy and Cheryl Bohannan's liability as guarantors for the credit card balance, $29,733.87. Accordingly, discovery is necessary to resolve the factual disputes surrounding the terms of the Credit Card Agreement and Defendants' liability thereunder.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion [16] for Summary Judgment is Granted against all Defendants as it relates to liability under the Note, and Denied against all Defendants as it relates to liability under the Credit Card Agreement. Defendants' Motion [23] to Continue is Granted as it relates to the Credit Card Agreement.


Signed on this 15th day of June, 2016.

<u>s/ James E. Shadid</u>
James E. Shadid
Chief United States District Judge